2011 OK CR 16

**Nytino E. GRIMES, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. RE–2009–904.**

Court of Criminal Appeals of Oklahoma.

May 4, 2011.

Brian N. Lovell, Attorney at Law, Enid, OK, for appellant at trial.

Irene K. Asai, Assistant District Attorney, Garfield County Courthouse, Enid, OK, for the State at trial.

Terry J. Hull, Appellate Defense Counsel, Norman, OK, for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Donald D. Self, Assistant Attorney General, Oklahoma City, OK, for the appellee on appeal.

## OPINION

C. JOHNSON, Judge.

¶1 On December 17, 2007, Appellant Grimes, represented by counsel, entered a guilty plea to a charge of Possession of a Controlled Substance (Marijuana) Within 2,000 Feet of a Park With Intent to Distribute, as charged in Garfield County Case No. CF–2007–623. Pursuant to a plea agreement, sentencing was delayed until June 19, 2008, to allow Grimes time to complete the Regimented Inmate Discipline (RID) program. On December 28, 2007, the Oklahoma Department of Corrections (DOC) advised the District Court that Grimes was ineligible for the RID program, and he was allowed to withdraw his guilty plea. On June 9, 2008, Grimes again entered a guilty plea to the charged offense. That same date, the Honorable Dennis W. Hladik, District Judge, sentenced Grimes to five (5) years imprisonment, with all but the first year suspended. Grimes was also given credit for time served.[1]

¶2 On June 24, 2009, the State filed an Application to Revoke Suspended Sentence alleging Grimes committed the additional offense of Domestic Abuse—Assault and Battery as charged in Garfield County Case No. CM–2009–535. On July 1, 2009, the State filed an Amended Application to Revoke, al-

1. Appellant was arrested on September 2, 2007, and remained incarcerated because he was unable to post bond. He alleges he spent a total of 263 days in custody prior to sentencing.

leging Grimes violated his probation by being charged with Driving Under Suspension in Garfield County Case No. CM–2009–568.

¶3 On July 15, 2009, Grimes, appearing *pro se* at the arraignment on the amended revocation application, entered a plea of not guilty and requested court-appointed counsel. Judge Hladik advised Grimes that he had a right to a hearing on the revocation application within 20 days, that he was granting Grimes' request for court-appointed counsel, and informed Grimes of the name of the attorney being appointed. Grimes then stated that he wanted to discuss with appointed counsel his option to waive the 20–day hearing rule applicable in revocation proceedings.[2] A bond hearing was set for August 7, 2009, but no hearing was scheduled to determine the merits of the revocation application at that time.

¶4 On July 31, 2009, the State filed a Second Amended Application to Revoke, alleging Grimes violated various rules of his probation. On August 13, 2009, Grimes appeared with counsel at the bond hearing.[3] On September 28, 2009, at the conclusion of the revocation hearing, Judge Hladik revoked the remaining four (4) years of Grime's suspended sentence, and gave him credit for time served. Grimes was also ordered to pay incarceration costs of $1,926.42. From this final order revoking his suspended sentence in full, Grimes appeals and raises the following issues:

1. The District Court was without jurisdiction to revoke Grimes' suspended sentence because the revocation hearing was not conducted within the statutory 20–day time period and Grimes did not waive that right;

2. The trial court abused its discretion by extending Grimes' sentence when it revoked a period of time which exceeded his suspended sentence;

3. The trial court abused its discretion by assessing additional costs of incarceration upon the revocation of Grimes' suspended sentence;

4. The Court Clerk was not authorized to tax multiple Oklahoma Court Information System (OCIS) fees or a court reporter fee against Grimes, and Grimes should be relieved of these fees; and

5. There was neither sufficient evidence nor a finding that Grimes committed the offense of Domestic Abuse Assault and Battery in Garfield County Case No. CM–2009–535, therefore this Court should direct that a *nunc pro tunc* order of revocation be entered removing the errant language that he committed this offense.

The order revoking Grimes' suspended sentence in full is **AFFIRMED**.

¶5 On July 15, 2009, Grimes appeared *pro se* at his arraignment, and entered a not guilty plea to the State's amended application to revoke. The District Court appointed counsel and advised Grimes of his right to have the revocation hearing conducted within twenty (20) days. Judge Hladik told Grimes that he could discuss the matter with counsel before he made that decision, and Grimes opted to do so. The court then set a bond appearance for August 7, 2009, twenty-two (22) days after the arraignment.

¶6 A Second Amended Application to Revoke was filed on July 31, 2009, containing allegations of new probation violations. On August 13, 2009, Appellant appeared in court, with counsel, and waived his right to jury trial in the two new cases which served as the basis for the original and first Amended Application to Revoke. The court set those two matters, and the revocation hearing, for September 11, 2009. Counsel was present at the August 13th hearing, and while Grimes' voiced his preference for an earlier hearing

---

2. The 20–day rule is derived from provisions within 22 O.S.Rev.Supp.2005, § 991b(A), which require a trial court, when presented with a petition to revoke a suspended sentence, to hold an evidentiary hearing thereon "within twenty (20) days after the entry of the plea of not guilty to the petition, unless waived by both the state and the defendant."

3. A notation to the District Court's docket dated August 6, 2009 indicates that the August 7, 2009 hearing was continued to August 13, 2009 "per Janice."

date, counsel advised the court that his client approved of the chosen date. There was no objection to the court's jurisdiction at the August 13, 2009, hearing and Grimes did not object that the 20 day rule had been violated, nor claim that the court had lost jurisdiction to hear his case.

¶ 7 The district court loses jurisdiction over a petition for revocation of a suspended sentence where the hearing is not held within twenty (20) days of the defendant's entry of a not guilty plea to the revocation petition, absent a valid waiver of a timely hearing. *See Byrd v. Caswell*, 2001 OK CR 29, ¶ 5, 34 P.3d 647, 648; *Baker v. State*, 1996 OK CR 49, ¶¶ 12–14, 927 P.2d 577, 581; *McCauley v. State*, 1991 OK CR 69, ¶ 4, 814 P.2d 157, 158, 22 O.S.Rev.Supp.2005, § 991b(A). However, a defendant cannot acquiesce in the delay of a hearing and/or participate in the continuance of a hearing and then claim that he is entitled to relief because the court did not abide by the 20–day time limitation. *See Yates v. State*, OK CR 179, ¶¶ 2–5, 761 P.2d 878, 879.

¶ 8 Grimes cannot opt to postpone his decision on the 20–day waiver pending consultation with counsel, wait until the 20–day time period expires, and then claim it was error for the court to conduct his revocation hearing more than twenty (20) days after entry of his plea. The time limitation was tolled upon Grimes' request to consult with counsel, and it was subsequently waived at the August 13, 2009, hearing when he agreed, however reluctantly, to the hearing date set by the court.

¶ 9 As for Grimes' second proposition, we find no error in the District Court's order revoking the remaining four (4) years of Grimes' suspended sentence. Citing this Court's decision in *Harris v. State*, 1989 OK CR 10, 772 P.2d 1329, Grimes argues that his credit for time served prior to sentencing somehow shortened the term of his suspended sentence to three years and 102 days. Grimes is correct that the ruling in *Harris* espouses this interpretation of the statute governing suspended sentences. In *Hemphill v. State*, 1998 OK CR 7, 954 P.2d 148, we made the following ruling regarding the time period to be used in administering a suspended sentence:

> Just as a defendant's suspended sentence may not be lengthened by intervening revocation orders occurring within the original term of sentence, a suspended sentence may not be shortened by intervening revocations. So long as there remains an unrevoked portion of the suspended sentence, the district court's power and authority to revoke all or part of it *does not end until the expiration of the original term of sentence.* The original term of sentence is that which is set by the district court at the time the order suspending was first entered.

*Id.* ¶ 9, 954 P.2d at 151 (emphasis added). At the time this Court issued its decision in *Hemphill,* we also found that because the District Court had given Harris credit for time served, *Harris* presented different circumstances, distinguishing it from *Hemphill,* and the *Harris* decision remained intact. *Id.* at ¶ 12, 954 P.2d 148.

¶ 10 As we stated in *Hemphill,*

> Our state's sentencing statutes contemplate that when a defendant is sentenced he receives only one sentence, not multiple ones. *The suspension order is not a separate sentence but is instead a condition placed upon the execution of the sentence.*

*Id.* ¶ 6, 954 P.2d at 150 (emphasis added). Grimes' suspended sentence, execution of which was partly suspended, began on June 9, 2008, and expires at midnight, June 8, 2013. During that five year span, he is obligated to abide by the terms and conditions of his probation or face revocation of the unexecuted portion of his sentence. The unexecuted portion of the sentence consists of any time during that five calendar year span not spent in custody.

¶ 11 Grimes' receipt of credit for time served does not shorten the length of his sentence and its corresponding probationary period. Rather, credit for time served goes only toward discharging that portion of the sentence ordered executed. It does not shorten any unexecuted portion of the sentence. Grimes cannot "bank" time served to shorten the calendar year term of his probation, i.e. the period of time during which he is

obligated to remain on good behavior. Consequently, the District Court did not "extend" Grimes' sentence when it revoked the remaining four years of his original suspended sentence.

¶ 12 To the extent that this Court's decision in *Harris* is inconsistent with this opinion, it is expressly overruled. We re-affirm the finding in *Hemphill* that the original calendar year term of a sentence, the execution of which is suspended, controls, and governs the time period during which a district court has power to revoke all or part of a suspended sentence. To that extent, we find no abuse of discretion in the District Court's revocation of the remaining four years of Grimes' suspended sentence.

■■■ ¶ 13 In Proposition III, Grimes argues it was error for the District Court to assess additional costs of incarceration "upon the revocation of Appellant's suspended sentence," characterizing the order imposing incarceration costs as a modification or alteration of the sentence imposed on June 9, 2008. At a hearing where the State seeks revocation of a suspended sentence, the question is whether the suspended portion of the sentence imposed should be executed, and the court makes a factual determination as to whether or not the terms of the suspension order have been violated. *Robinson v. State,* 1991 OK CR 44, ¶ 3, 809 P.2d 1320, 1322. The consequence of judicial revocation is to execute a penalty previously imposed in a judgment and sentence. *Id.; Burnham v. State,* 2002 OK CR 6, fn. 2, 43 P.3d 387, 389, n. 2; *Degraffenreid v. State,* 1979 OK CR 88, 599 P.2d 1107, 1110; *Bishop v. State,* 1979 OK CR 9, ¶ 4, 593 P.2d 505, 507; *Marutzky v. State,* 1973 OK CR 398, ¶ 5, 514 P.2d 430, 431. Grimes does not argue that the incarceration amount assessed is inaccurate. Rather, he claims that no costs can be imposed during a revocation proceeding, characterizing them as "additional punishment" and therefore outside of the scope of the

district court's authority in a revocation proceeding.[4]

¶ 14 The statutory provisions allowing for the assessment of incarceration costs are found at 22 O.S.Supp.2008, § 979a(A). Grimes misinterprets this statutory language, which states, in relevant part:

> The court shall *require* a person who is actually received into custody at a jail facility or who is confined in a city or county jail or holding facility, for any offense, *to pay the jail facility or holding facility the costs of incarceration, both before and after conviction,* upon conviction or receiving a deferred sentence. The costs of incarceration *shall be collected by the clerk of the court as provided for collection of other costs and fines,* which shall be subject to review under the procedures set forth in Section VIII of the Rules of the Oklahoma Court of Criminal Appeals, Chapter 18, Appendix of this title.

*Id.* (emphasis added).

¶ 15 Section 979a(A) mandates the assessment of incarceration costs against *any* person received into custody who is convicted or receives a deferred sentence.[5] These incarceration costs serve as reimbursement for the defendant's expenses incurred while in custody. The assessments apply for expenses incurred whether they occur before conviction, after conviction or upon conviction. If the defendant receives a deferred sentence, which is not a conviction, he is still required to pay incarceration expenses incurred before and after entry of the order deferring sentencing. The purpose of the statute is to hold defendants accountable for incarceration costs at every stage of their criminal proceedings.

■■■ ¶ 16 A judgment and sentence where execution of all or a portion of the assessed sentence is suspended *is* a conviction. For purposes of assessing incarceration costs, Grimes was convicted. Although a portion of his sentence was suspended, Grimes was sub-

---

4. Grimes cites to two of this Court's unpublished opinions in support of this proposition. *See, Huff v. State,* RE–2002–174 (November 6, 2002) (Not for Publication) and *Hayes v. State,* RE–2009–80 (February 19, 2010) (Not for Publication).

5. A deferred sentence is not a conviction unless it is subsequently accelerated. *See* 22 O.S.Supp. 2010, 991c(A) & (E).

sequently confined in a county jail under arrest pending his revocation hearing. This custodial confinement occurred "after conviction" while Grimes remained subject to the terms and conditions of his probation. The assessment of incarceration fees is mandatory, and the statutory language requires that the court clerk "shall" collect the incarceration costs as provided for the collection of other costs and fines. The assessment of incarceration costs in a revocation proceeding does not constitute an additional punishment, but rather is an administrative matter, authorized and mandated by statute.

¶ 17 As we have noted on numerous occasions, the scope of review for an appeal of a revocation of a suspended sentence is limited to the validity of the revocation order. Rule 1.2(D)(4), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011). Because the issue of incarceration costs does not concern the validity of the revocation order issued in this case, we decline to further address the matter in this appeal.

██ ¶ 18 In Proposition IV, Grimes alleges that the Court Clerk taxed multiple fees against him, including a court reporter fee, all of which he claims were improper. The record in this case is devoid of any evidence that the cost assessment was objected to as improper, that the costs assessed were incorrect, or that the Court Clerk was without authority to request assessment of the fees. There is likewise no indication that this issue was ever presented to the District Court for resolution, and the appeal record contains insufficient information for this Court to address the matter, even if we were so inclined. As noted above, the assessment of costs is an administrative matter, irrelevant to the propriety of the order revoking Grimes' suspended sentence. This issue falls outside of the scope of review for a revocation appeal, and Grimes cites no authority authorizing an appeal to this Court of the imposition of costs and fees in a revocation proceeding.

¶ 19 If Grimes feels that the assessed costs, including various court fees and incarceration costs, are incorrect, he should present the issue to the District Court for resolution in accordance with established procedures.

██ ¶ 20 In his final proposition of error, Grimes alleges that the revocation order issued by the District Court erroneously states that he was found guilty of the charged offense of Domestic Abuse—Assault and Battery (Garfield County Case No. CM–2009–535). Grimes contends the record reflects no such finding. He seeks remand of this matter to the District Court and asks this Court to order the District Court to issue an order *nunc pro tunc* to correct the alleged error. The State's response indicates it has no objection to Grimes' claim, but argues that the matter is not proper for consideration in a revocation appeal. The State suggests amendment of this Court's Rules to require that such modification requests be submitted to the District Court for resolution before the matter can be presented to this Court on appeal.

██ ¶ 21 There is no need for this Court to amend its Rules because our Rules and decisions already address this issue. The scope of review in a revocation appeal is limited to the validity of the revocation order executing the previously imposed sentence. Rule 1.2(D)(4), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011). Grimes' claim constitutes a request for extraordinary relief, seeking correction of a scrivener's error. *See* Rule 10.1(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011). If Grimes believes he is entitled to issuance of an order *nunc pro tunc,* a proper request for such an order should be made directly to the District Court, prior to seeking any redress through this Court. This Court will entertain extraordinary requests for relief only when a petitioner has sought and been denied relief in the District Court. *Id.* Absent a determination by the District Court, this Court will not assume jurisdiction of an extraordinary writ, especially in a revocation appeal where our review is limited to whether or not the District Court abused its discretion in revoking all or part of a defendant's suspended sentence. The request for issuance of an order *nunc pro tunc* is **DENIED.**

## DECISION

¶ 22 The order of the District Court of Garfield County revoking Appellant's suspended sentence in Case No. CF–2007–623 is **AFFIRMED,** and request for issuance of an order *nunc pro tunc* is **DENIED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J., LEWIS, V.P.J., and SMITH, J.: concur.

LUMPKIN, J.: specially concur.

LUMPKIN, Judge: Specially Concurring.

¶ 1 I write to reiterate that the State has until the expiration of the suspended sentence (until midnight on the last day) to file an application to revoke. *Hemphill v. State,* 1998 OK CR 7, ¶ 3, 954 P.2d 148, 149; *Crowels v. State,* 1984 OK CR 29, ¶ 6, 675 P.2d 451, 453; *Degraffenreid v. State,* 1979 OK CR 88, ¶¶ 10–11, 599 P.2d 1107, 1109. Once the application has been filed, the district court is vested with judicial power to determine the issue of revocation even if the hearing occurs after the expiration of the original term of sentence. *Crowels,* 1984 OK CR 29, ¶ 6, 675 P.2d at 453; *Degraffenreid,* 1979 OK CR 88, ¶ 11, 599 P.2d at 1109. At that hearing the district court has the authority to revoke any remaining unrevoked time, in part or in whole, even if it goes beyond the normal ending date of the original sentence. *Hemphill,* 1998 OK CR 7, ¶¶ 6–7, 9, 954 P.2d at 150; *Degraffenreid,* 1979 OK CR 88, ¶ 11, 599 P.2d at 1109.

¶ 2 As to the authority to assess costs in revocation proceedings, it must be recognized the authority to assess additional cost upon a defendant is only conferred on the District Court if first a valid revocation order is entered. If the District Court denies the application to revoke, i.e. finds the evidence at the revocation hearing is not sufficient to grant the application, then there is no authority to require the defendant to pay any additional costs as a result of the revocation proceedings.